**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **STEVE SHELTON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 3:09-cv-0318** |
| ) | |
| **RUTHERFORD COUNTY, TENNESSEE and** ) | |
| **JAMES C. COPE individually and in his** ) | |
| **official capacity as Rutherford County Attorney,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| **and** ) | **Consolidated with:** |
| ) | |
| **RUTHERFORD PROPERTY OWNERS, LLC and** ) | |
| **BPU HOLDINGS, LLC,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **Case No. 3:09-cv-0413** |
| ) | |
| **RUTHERFORD COUNTY, TENNESSEE and** ) | |
| **JAMES C. COPE individually and in his** ) | |
| **official capacity as Rutherford County Attorney,** ) | |
| ) | |
| **Defendants.** ) | **Judge Thomas A. Wiseman, Jr.** |

**MEMORANDUM OPINION**

Plaintiffs in the lead action (3:09-cv-318) (the "Shelton Plaintiffs") initially brought this action against defendants Rutherford County, Tennessee and Rutherford County Attorney James C. Cope in his official and individual capacities asserting claims pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1988 for compensatory and punitive damages arising from alleged violations of their rights under the Fifth and Fourteenth Amendments to the United States Constitution, including a violation of their substantive due process rights. In the alternative, the Shelton Plaintiffs assert state-law claims for inverse condemnation and negligence against defendant Rutherford County only. In the related action (case number 3:09-cv-0413) that has now been consolidated with the action brought by the Shelton Plaintiffs, plaintiffs Rutherford Property Owners, LLC ("RPO") and BPU Holdings, LLC ("BPU") (the "Developers" or "Developer Plaintiffs") assert virtually identical causes of action, minus the inverse condemnation claim,

based upon the same alleged wrongdoing.

Now before the Court are two separate motions to dismiss under Rule 12(b)(6) brought by defendants Rutherford County and James C. Cope. The first (Doc. No. 25) seeks dismissal of the claims brought by the Shelton Plaintiffs; the second (Doc. No. 27) seeks dismissal of the claims brought by the Developer Plaintiffs. Because the motions are essentially identical, the Court will consider both herein and, for the reasons discussed below, will grant those motions in part with regard to the state-law claims. In all other respects, however, both motions will be denied.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

Consolidated plaintiff RPO is a Delaware limited liability company whose principal office is located in New York. It was formed to provide equity financing for the development and operation of Bible Park, USA, a Bible-based theme park which was to have been located in Rutherford County, Tennessee. Plaintiff BPU asserts in the Developer Plaintiffs' Second Amended Complaint that BPU is a Delaware corporation properly formed and registered prior to the date on which the events giving rise to its claims arose. (Developer Pls.' 2d Am. Compl., Doc. No. 31 (hereinafter, "2d Am. Compl."), at ¶ 4.)[1] It was formed for the purpose of developing and operating the Bible theme part in the event all the necessary real estate was acquired for the construction thereof. Defendants assert in their motion to dismiss the Developer Plaintiffs' claims that BPU did not exist as a legal entity at the time when the events giving rise to its complaint occurred, and have attached to their Memorandum in support of their motion documentation showing that BPU Holdings formed as a Tennessee limited liability company in September 2008. Plaintiffs contend, to the contrary, that the Tennessee limited liability company to which Defendants refer is a separate and distinct entity from the Delaware entity, the latter of which is the proper plaintiff in this action.

In any event, the Shelton Plaintiffs own approximately 240 acres of largely undeveloped farmland in Rutherford County near the intersections of Interstates 24 and 840 (the "Property") on which, along with

---

[1] The Court notes that the Developer Plaintiffs improperly filed their Second Amended Complaint, without permission from the Court and after the Defendants filed their Motion to Dismiss. *See* Fed. R. Civ. P. 15(a). The Second Amended Complaint, however, appears only to make a few minor corrections to the First Amended Complaint, and none of the parties has asserted that the filing is objectionable or that it has in any material way affected the prior filing of the Motion to Dismiss the Developer Plaintiffs' complaint. The Court will therefore accept the filing of the Second Amended Complaint without requiring a motion, and will presume the motion to dismiss to be directed to the Second Amended Complaint.

other property to be acquired by the Developer Plaintiffs, the Bible theme park was to have been constructed by the Developers.

In February 2007, RPO entered into an agreement with some of the Shelton Plaintiffs to purchase the Property for development of the park. Under the terms of the Agreement, RPO had the option to purchase the Property conditioned upon its obtaining the necessary permits and zoning alterations for the construction of the park. The initial contract provided by its terms that it was to expire on February 28, 2008, but the parties agreed to extend it through September 1, 2008.

On February 12, 2008, BPU, as the Shelton Plaintiffs' assignee, filed a Rezoning Application before the Rutherford County Commission through which BPU sought to change the zoning status of the Property from "agricultural, residential or religious" to "commercial" use so that the Property could be used for a Bible theme park. The Rezoning Application was denied by the Rutherford County Commission ("Commission") on May 15, 2008. At that meeting, after much contentious discussion and public debate, the Commission was notified that County Attorney Cope had "ruled" that § 4.05 of Rutherford County's Zoning Resolution applied to the Plaintiffs' Application, which meant that a two-thirds majority vote of the Commissioners was required in order for the Rezoning Application to pass. Pursuant to § 4.05, its "supermajority vote" requirement was triggered only if twenty percent of the "owners" of land adjacent to or directly across a public road from the property that was the subject of a rezoning application or conditional-use permit filed valid protest petitions opposing the application. The Commission voted by a margin of 12 to 9 in favor of passing BPU's Application. Because the Commissioners understood that the provisions of § 4.05 had been triggered, requiring a supermajority of 14 in order to pass, the application was denied.

At a subsequent meeting held on June 12, 2008, Plaintiff Steve Shelton addressed the Commission and advised its members that the application of § 4.05 had been incorrect because, in counting "owners" eligible to file protest petitions, Attorney Cope had failed to follow the County's own definition of "owner" contained in § 2.02 of the Zoning Resolution when he tallied the number of protest petitions. That oversight resulted in a failure to count an additional forty legal title owners who would have been eligible to, but did not, file protest petitions. Taking that number into account, fewer than the requisite twenty percent of "owners" filed protest petitions, such that § 4.05 was never actually triggered.

Mr. Shelton provided each Commissioner with documentation supporting his conclusion. He also presented legal authority in the form of a copy of an unreported judicial opinion from the Tennessee Court of Appeals stating that "community opposition is not a legitimate basis to deny a zoning application that meets all local zoning law requirements." (Shelton Pls.' 1st Am. Compl., Doc. No. 23 (hereinafter, "1st Am. Compl."), at ¶ 43, citing *B&B Enters. of Wilson County, LLC v. City of Lebanon*, No. M2003-00267-COA-R3-CV, 2004 Tenn. App. LEXIS 848 (Tenn. Ct. App. Dec. 16, 2004).) On the basis of the evidence and legal authority he presented, Mr. Shelton requested that the Commission reconsider its decision to deny the Rezoning Application, since it had received more than a majority vote in favor of approving it. The Commission declined to reconsider its prior decision.

On July 25, 2008, the Shelton Plaintiffs appealed the Commission's decision to the Chancery Court for Rutherford County by filing a common law Petition for Writ of Certiorari. In the Chancery Court action, Rutherford County filed a motion arguing that the Commission's decision denying the Rezoning Application was a "purely legislative" decision, review of which required the filing of an entirely new declaratory judgment action in state court and not merely a petition for certiorari. On that basis, the County argued that the petition for certiorari should be recharacterized as a plenary declaratory judgment action with expanded discovery and consideration of evidence. The Chancery Court, Chancellor Robert Corlew, denied that motion but nonetheless granted the County's request to expand the scope of discovery and to consider evidence outside the administrative record, based on a determination that the administrative record alone was not sufficient to permit a ruling on the certiorari petition. In fact, after production of the administrative record, ten depositions were taken and over one thousand pages of additional records and exhibits were produced. A hearing or trial was held on October 1, 2008, and the Chancery Court issued its order vacating the Commission's decision on October 20, 2008.

In his written opinion, Chancellor Corlew specifically held that the question of whether a supermajority vote was required for passage of Plaintiffs' Rezoning Application was a matter which should have been determined, under the law, by the Commission rather than by the County Attorney and, furthermore, that the record did not reflect that the Commission had actually made that determination, or even that it was aware it had the authority to do so. Second, the Chancellor determined that the record was "devoid of reasons, other than community opposition, for denial of the Zoning Request." (Doc. No. 1-

4 at 25.)  Finally, the court directed that, upon remand and reconsideration of the application of § 4.05 of the Zoning Resolution, the Commission should apply the definition of "owner" contained in § 2.02 of the Zoning Resolution, and that "great care must be used to assure that the application of the provisions of Section 4.05 is made [in] a manner which is fair and appropriate and not discriminatory, arbitrary or capricious."  (Doc. No. 1-4 at 25.)

Having made those determinations, Chancellor Corlew then noted that the petitioners "sought attorney's fees pursuant to the provisions of Federal law due to the violation of the[ir] civil rights . . . under 42 USC § 1983, and 42 USC § 1988."  (*Id.*)  Although the Chancellor did not specifically make a determination that the Defendants' actions had violated the Plaintiffs' constitutional rights, he nevertheless found it appropriate, "after considering all the proof," to award attorneys' fees to the Shelton Plaintiffs pursuant to 42 U.S.C. § 1988.  (*Id.*)  In the Order accompanying his Memorandum Opinion, Chancellor Corlew stated as follows:

> to the extent the May 15, 2008 decision of the Rutherford County Commission to not approve the Zoning Application affecting Petitioners' and others' properties for a Conditional Use Permit for a development to be called "Bible Park, USA" was legislative, as the County asserts, it was not made upon any fairly debatable and rational basis; and to the extent that decision was administrative, it was illegal, arbitrary and capricious.

> It is therefore ORDERED, ADJUDGED AND DECREED that the decision of the Rutherford County Commission is vacated and the cause remanded to that body for further consideration in accordance with the guidelines established in the MEMORANDUM OPINION.

> It is further ORDERED that it is appropriate to award counsel fees to the Petitioners pursuant to 42 USC §§ 1983 and 1988.

(Doc. No. 1-5, 11-4-2008 Chancery Court Order at 2.)

The County appealed the Chancery Court decision.  The Tennessee Court of Appeals heard oral argument in the case on July 7, 2009 but as of the filing of this opinion has not yet issued a ruling on the appeal.

Plaintiffs have now filed suit in this Court for damages from both Rutherford County and County Attorney James Cope for damages arising from the same acts that were the subject of their Petition for Writ of Certiorari before the Rutherford County Chancery Court, on the basis that those acts violated their "federal civil and property rights under color of state law . . . under 42 U.S.C. § 1983, 1985(3) and 1988." (1st Am. Compl. at ¶ 1.)  In the body of the Amended Complaint, Plaintiffs assert that the arbitrary actions

of the Defendants violated their procedural due process and equal protection rights and that the "[f]ailure of a local government to provide . . . training and instruction [to "avoid wrong decisions affecting the lives and property rights of Rutherford County citizens and property owners"] constitutes a deliberate indifference to an obvious need for such training and instruction and is an unconstitutional policy in violation of 42 U.S.C. § 1983." (1st Am. Compl. ¶ 27.) In the enumerated counts of their complaint, however, they claim only that (1) their substantive due process rights were violated by the County Commission's use of the supermajority vote to justify rejection of their Rezoning Application; (2) that the Chancery Court's order concluding that Rutherford County violated Plaintiffs' civil rights is entitled to full faith and credit in this Court; and (3) alternatively, against Rutherford County only, Plaintiffs assert claims for inverse condemnation and negligence.[2] Specifically, in their Amended Complaint before this Court, the Shelton Plaintiffs allege that the arbitrary, capricious and unconstitutional actions of the Rutherford County Commission and County Attorney James Cope caused them to lose their $11,040,000 contract to sell the Property. The Developer Plaintiffs assert essentially the same claims, minus the cause of action for inverse condemnation.

Defendants have now filed their motion to dismiss the claims brought by both sets of plaintiffs.

## II.    STANDARD OF REVIEW

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure seeks to have the complaint dismissed based upon the plaintiff's failure to state a claim upon which relief can be granted. The reviewing court must "accept all the . . . factual allegations as true and construe the complaint in the light most favorable to the Plaintiff[ ]." *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (internal quotation marks omitted). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under

---

[2] Plaintiffs also include approximately eight pages of allegations of "official misconduct" on the part of Defendant Cope, including an entire section on the various ways in which he allegedly violated the Tennessee Open Records Act and otherwise engaged in official misconduct. Plaintiffs acknowledge, however, in response to the Defendants' motion to dismiss, that they have not stated and did not intend to state separate causes of action for violations of the Tennessee Open Records Act, libel or "official misconduct." Rather, those factual allegations are intended to bolster the inverse condemnation claim, as well as to serve as "additional evidence [sic] of defendants' willful and callous actions, policies and practices that violated Plaintiffs' civil rights by trying to hide and cover up indefensible methods and violations of the County's own zoning laws. . . . They also [are intended] to support the claim for punitive damages against defendant Cope." (Doc. No. 33, at 3–4.)

some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted). "[E]ven though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.' " *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## III.   ANALSIS AND DISCUSSION

Defendants argue that the Shelton Plaintiffs' § 1983 claims must be dismissed because (1) Plaintiffs have violated Tennessee's rule prohibiting a party from splitting its cause of action and, because Plaintiffs had a full and fair opportunity to litigate their § 1983 claims in state court, they are precluded on *res judicata* grounds from attempting to do so now in this forum; (2) as a matter of law, Plaintiffs lack a fundamental property right to have their property rezoned and therefore cannot state a substantive due process claim based upon the Commission's denial of the Rezoning Application; and (3) if the § 1983 claims are dismissed, the Court has no reason to exercise supplemental jurisdiction over the state-law actions and so should dismiss those claims as well.[3]   Alternatively, the Defendants assert substantive bases for the dismissal of state-law negligence and inverse condemnation claims.

With respect to the claims brought by the Developer Plaintiffs, the Defendants assert the exact same arguments in support of their motion to dismiss those claims, asserting that because the Developer Plaintiffs are in "privity" with the Shelton Plaintiffs, their § 1983 claims are subject to dismissal on the same *res judicata* grounds as those brought by the Shelton Plaintiffs.   In addition, they contend that Plaintiff BPU lacks standing to bring any claims because it did not exist as a legal entity at the time its claims arose.

In response to the Defendants' arguments, the Plaintiffs assert that BPU has standing, and that the Defendants are the party whose claims are barred by *res judicata*.   Specifically, Plaintiffs maintain that Defendants are bound by the Chancery Court's findings that the actions of the Planning Commission

---

[3] Defendants also include an argument that Rutherford County cannot be liable under § 1983 based on a *respondeat superior* theory, so the claims that rest upon that theory must fail.   Plaintiffs, however, deny bringing or attempting to bring the two causes of action that Defendants characterize as having been brought under a *respondeat superior* theory, including any civil rights claim premised upon a violation of the Tennessee Open Records Act or upon the alleged covering up of official misconduct by Cope.   The Court therefore has no need to address the *respondeat superior* argument.

giving rise to the damages asserted in this action violated the Plaintiffs' constitutional rights, as the Chancellor implicitly found when he awarded Plaintiffs attorney fees pursuant to § 1988.

As discussed in greater detail below, the Court finds that Plaintiffs are not precluded from bringing claims in this Court which they did not have the option to bring in the state-court certiorari action, but that this Court is bound by the final judgment of the Chancery Court that the Rutherford County Commission violated the Shelton Plaintiffs' civil rights when it denied their Rezoning Application. The Plaintiffs' state-law claims are, however, subject to dismissal.

### A.      The Standing Issue

Plaintiff BPU has adequately pleaded that it is an entity with standing to bring the present actions. The motion to dismiss will be denied insofar as it is premised upon lack of standing.

### B.      Plaintiffs' Claims Are Not Barred by *Res Judicata*

Defendants first argue that, although the Shelton Plaintiffs did not seek damages from Rutherford County or assert any claims against County Attorney Cope in the Chancery Court action, "they could have done so," and, because they "had a full and fair opportunity to litigate in state court the § 1983 claims they now seek to pursue in this action, Plaintiffs are barred from relitigating these claims in federal court" by Tennessee's claim-preclusion law. (Doc. No. 26, at 8.) Defendants contend that the Developer Plaintiffs are in privity with the Shelton Plaintiffs and, as such, could and should have joined whatever claims they had in that action.

In response, the Plaintiffs argue first that Defendants' claim-preclusion argument itself is precluded by *res judicata*, because Chancellor Corlew considered and rejected their argument that Plaintiffs' petition for certiorari appeal should be converted into a plenary declaratory judgment lawsuit. In addition, Plaintiffs contend that because the state-court action was in the nature of a very narrow petition for a writ of certiorari, to which Plaintiffs were not permitted to append additional claims or add defendants, the claims brought before this Court are not precluded. The Developer Plaintiffs further argue that their claims and damages are not identical to those of the Shelton Plaintiffs and that they did not have the option or ability to join their claims to the Shelton Plaintiffs' in the Chancery Court action. In the alternative, all the Plaintiffs argue that they had not yet suffered damages at the time they brought the state-court certiorari petition was brought and therefore could not have sought damages at that point.

This Court agrees with the Plaintiffs that their claims here are not barred by principles of claim preclusion. Under Tennessee law, the writ of certiorari is a common-law doctrine that is authorized by statute, which states that it "may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy." Tenn. Code Ann. § 27-8-101. A common-law writ of certiorari is an appellate action, not an original action. *Hoover, Inc. v. Metro. Bd. of Zoning Appeals*, 955 S.W.2d 52, 55 (Tenn. Ct. App. 1997). The procedure for such a supervisory appeal does not permit the addition of allegations or claims that were not before the local body whose decision is appealed. *Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 386 (Tenn. Ct. App. 1983) ("heartily condemn[ing]" as improper the "growing practice" of joining a certiorari "appeal with an original action and the simultaneous consideration of both at the trial level," and on that basis affirming as proper the trial court's dismissal of the petitioner's claim for damages); *Winkler v. Tipton County Bd. of Educ.*, 63 S.W.3d 376, 383 (Tenn. Ct. App. 2001) (holding that the chancery court had correctly refused to allow the petitioner-teacher to combine in a single action her certiorari appeal of her suspension by the Tipton County Board of Education and her claim for damages under 42 U.S.C. § 1983). *See also B&B Enters. of Wilson County, LLC v. City of Lebanon*, No. M2006-02464-COA-R9-CV, 2007 WL 1062216, at *2 (Tenn. Ct. App. April 9, 2007) ("Where an original action for damages has been joined with a petition for writ of certiorari, the claim for damages should be dismissed at the very outset." (citations omitted)).

The Tennessee Supreme Court has noted that the language of the statutory provision appears to limit the writ to judicial determinations by lower tribunals or administrative agencies, making the writ appropriate for such matters as appeals from determinations made by a Board of Zoning Appeals, which are administrative, but inappropriate for such matters as challenges to the enactment of ordinances or resolutions which create or amend zoning regulations, which are legislative. *Fallin v. Knox County Bd. Of Comm'rs.*, 656 S.W.2d 338, 342 (Tenn. 1983). If a plaintiff "mistakenly employs the remedy of certiorari the court may treat the action as one for declaratory judgment and proceed accordingly, rather than dismiss the action." *Id.*

The parties here dispute whether the Rutherford County Commission's decision to deny the

Rezoning Application was in the nature of an administrative zoning decision, or a legislative determination to deny a request to amend the County's zoning regulations. The Chancery Court apparently resolved that issue in favor of the Plaintiffs, concluding that the challenged action was administrative in nature, when it denied the Defendants' motion to convert the action into one for declaratory judgment in accordance with *Fallin*. Defendants argue, despite the denial of their motion, that the Chancery Court "never actually decided whether Plaintiffs' challenge should proceed as a common law writ of certiorari or as a declaratory judgment action." (Doc. No. 35, at 2.) Defendants' confusion in that regard is somewhat warranted based on the Chancellor's decision to permit the introduction of evidence outside the administrative record, which normally is not appropriate in certiorari proceedings, and the references in his decision to the standards of review applicable both to certiorari appeals (whether the Commission's decision was illegal, arbitrary or capricious) and declaratory judgment actions (whether the decision was made on a fairly debatable, rational basis). Recognizing, however, that he might be thought to have erred in considering new evidence in the context of a certiorari appeal, the Chancellor specifically addressed his rationale for doing so, noting that without supplementation of the record he would have been "required to find there was no discussion of the supermajority issue at all. Further, a number of the portions of the minutes of the meetings were unclear without the further testimony of the participants present." (Doc. No. 1-4, at 3 n.2.) With respect to his reference to the declaratory judgment standard of review (and his recognition that he had a "duty to consider the validity of the legislative actions of the County Commission to the extent that a legislative decision was made" (*id.* at 2), it seems that the Chancellor was not entirely convinced that the County Commission's decision was administrative (and thus appropriate for certiorari review). His reference to the standard of review applicable to administrative decisions, however, was for the apparent purpose of pointing out that the standards were essentially the same, thereby bolstering the outcome of his decision in the event the Court of Appeals determined he had erred in denying the motion to convert the action into a declaratory action. The Chancery Court's decision to award attorneys fees based on § 1988 is also potentially problematic, but, again, the decision does not indicate that the Chancellor intended to treat the action as a declaratory judgment action, nor did it open the door to permit Plaintiffs to join additional claims or defendants to the chancery action. In sum, Chancellor Corlew clearly considered the action before him to be a certiorari appeal and therefore denied the Defendants' motion to

convert it into a declaratory judgment action, but he hedged his bets by acting in other respects as if it were a declaratory judgment action.

Regardless of the correctness of the order denying the Defendants' motion to convert the action into a declaratory judgment action (which has been appealed), it had the effect of barring Plaintiffs from amending their petition to add an additional defendant or additional claims. That decision, having been litigated and necessarily decided by the Chancery Court, is not appropriately subject to a challenge by Defendants in this Court. In that regard, this Court recognizes the possibility that the Tennessee Court of Appeals may conclude that the Chancery Court erred in permitting supplementation of the administrative record, in denying the Defendants' motion to convert the proceeding into a declaratory judgment action requiring plenary review, or in awarding attorneys' fees without making an express finding that the Shelton Plaintiffs' constitutional rights had been violated. For now, however, the state court's action stands, and this Court is bound by the Rutherford County Chancery Court's own perception and characterization of the action before it. Because that action was a limited appeal of the County Commission's action and not an original action, the Plaintiffs did not have the ability to add defendants or claims to their action. Consequently, assuming without deciding that claim or issue preclusion would otherwise have applied under the circumstances, this Court finds that the claims and arguments pursued in this action, which the Plaintiffs did not have the ability to pursue in the Chancery Court, are not barred by the doctrine of issue preclusion.

### C. Defendants' Motion to Dismiss the Substantive Due Process Claim Is Barred.

#### (1) Res Judicata Generally

Defendants contend in the alternative that the Shelton Plaintiffs' substantive due process claims are subject to dismissal on the merits. The Plaintiffs argue, in response, that Defendants' motion to dismiss their substantive due process claim is barred by *res judicata*. Specifically, the Shelton Plaintiffs argue as follows:

> Inherent in the Chancellor's ruling is the correct legal and common sense determination that Plaintiffs had a federally protected constitutional right to expect that the County would not act irrationally, illegally, arbitrarily and capriciously in applying its own zoning laws. . . . A fundamental purpose of due process is to prevent governmental abuse of power by arbitrary, irrational and illegal actions. Defendants' argument that Plaintiffs had no constitutionally protected right presumes that the Chancellor's ruling was wrong, but Defendants are precluded by *res judicata* from trying to relitigate that claim in this court. Likewise inherent in the Chancellor's § 1983 ruling is that the County's actions were

sufficiently willful, unreasoning or shocking to justify requiring the County to reimburse Plaintiffs' attorney fees under 42 USC § 1988. Unless reversed, these rulings stand.

(Doc. No. 33, at 6.)

The Sixth Circuit has recognized as a general proposition that there are two branches of *res judicata*: claim preclusion and issue preclusion. Under the claim preclusion branch, an earlier final judgment on the merits precludes a party from raising an issue in new litigation that should have been advanced in the earlier proceedings. *City of Canton v. Maynard*, 766 F.2d 236, 237–38 (6th Cir. 1985) (citation omitted). Under the issue preclusion branch, "parties are precluded from relitigating an issue of law or fact which was *necessarily decided in a previous final judgment*." *Id.* (emphasis added; citation omitted). A state trial-court ruling is considered "final" for purposes of *res judicata* even if an appeal has been taken and remains undecided. 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4427)(2d ed. 2002).

The type of preclusion before this Court appears to be of the "issue" type, since Plaintiffs are asserting that Chancellor Corlew necessarily found as a matter of fact and law that Rutherford County Commission violated their substantive due process rights under § 1983 when it acted arbitrarily and capriciously in denying their Rezoning Application as an initial matter, and in refusing to reconsider that decision even when confronted with evidence that the decision was incorrect. The question posed here is to what extent are this Court's hands tied by the Chancery Court's ruling—namely, whether Chancellor Corlew "necessarily decided" that the Rutherford County Commission violated Plaintiffs' substantive due process rights when he concluded they were entitled to recover attorneys' fees, even though he did not mention the words "substantive due process" or otherwise identify which of the Plaintiffs' constitutional rights had been violated, or in precisely what manner.

### *(2)* *The Preclusive Effect of the Chancery Court Ruling*

The Sixth Circuit has "recognized that a substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest." *Warren v. City of Athens*, 411 F.3d 697, 707 (6th Cir. 2005). Further, the court has recognized that "citizens have a right not to be subjected to arbitrary or irrational zoning decisions." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992), *quoted in Tri-Corp Mgmt. Co. v. Praznik*, 33 Fed. Appx. 742, 747 (6th Cir. 2002). *See also Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S.

252, 263 (1977) (noting that the claimant had a constitutional "right to be free of arbitrary or irrational zoning actions"). However, to state a substantive due process claim in the context of zoning regulations, it is not enough to establish that the government acted arbitrarily and capriciously; the plaintiff must establish the arbitrary and capricious action had the effect of depriving him of a constitutionally protected property or liberty interest. *Silver v. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992).

Defendants here argue that Plaintiffs cannot establish that they possessed or have been denied a constitutionally protected property or liberty interest. Defendants have not, however, addressed the import of Chancellor Corlew's decision. This Court finds that, by ruling that the County Commission's denial of the Rezoning Application either was "not made upon any fairly debatable and rational basis" or was "illegal, arbitrary and capricious" and, based on that conclusion, that Plaintiffs were entitled to attorneys' fees under § 1988, the Chancery Court necessarily decided, as a matter of fact and law, that the actions of the Commission infringed upon some constitutionally protected property interest and thereby violated Plaintiffs' substantive due process rights.

Again, that decision has been appealed and may or may not be overturned. For now, however, it qualifies as the final decision of the state court, and one which has preclusive effect on the parties before this Court. Defendants' motion to dismiss the substantive due process claim on the grounds that Plaintiffs have not established the existence of a constitutionally protected property or liberty interest must therefore be denied.

### D.     Plaintiffs' Inverse Condemnation Claim Is Inadequately Pleaded.

The Shelton Plaintiffs' inverse condemnation claim is a state-law claim that was not brought before the Chancery Court. Neither the claim itself nor the Defendants' motion to dismiss it is barred on preclusion grounds and the Court may consider it on the merits.

The Tennessee Supreme Court has stated as follows regarding eminent domain and inverse condemnation:

> The Tennessee Constitution states that "no man's particular services shall be demanded, or property taken, or applied to public use . . . without just compensation being made therefor." Tenn. Const. art. I, § 21. This constitutional provision recognizes the governmental right of eminent domain. The government is prohibited, however, from taking property for private purposes and must pay just compensation when property is taken for public use.

*Edwards v. Hallsdale-Powell Util. Dist.*, 115 S.W.3d 461, 464–65 (Tenn. 2003) (internal citations omitted).

In that regard, the Tennessee General Assembly has enacted an inverse condemnation statute which states, in relevant part:

> If, however, such [governmental defendant] has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest [as provided for in the eminent domain statutes] . . . or the owner may sue for damages in the ordinary way. . . .

Tenn. Code Ann. § 29-16-123 (2000). In sum, "inverse condemnation" is the popular description for a cause of action brought by a property owner to recover the value of real property that has been "taken" for public use by a governmental defendant even though no formal condemnation proceedings under the government's power of eminent domain have been instituted.

A "taking" of real property occurs when a governmental defendant with the power of eminent domain performs an authorized action that "destroys, interrupts, or interferes with the common and necessary use of real property of another." *Pleasant View Util. Dist. v. Vradenburg*, 545 S.W.2d 733, 735 (Tenn. 1977). While not every destruction or injury to property caused by governmental action constitutes a taking under the Tennessee Constitution, Tennessee courts have recognized that when zoning regulations operate to deprive property owners of all beneficial use of their property, such zoning regulations may constitute a government "taking" for inverse condemnation purposes. *See, e.g.*, *Bayside Warehouse Co. v. City of Memphis*, 470 S.W.2d 375, 378 (Tenn. Ct. App. 1971) (where the City Council rezoned plaintiff's property from M-2-Industrial to C-3-Commercial, thereby effectively preventing the owner from using the property at all, it constituted a taking sufficient to support an inverse-condemnation claim). However, Tennessee courts have also held that a zoning regulation that merely deprives an owner of what he perceives to be the *most* beneficial use of his property, but does not deprive him of *all* beneficial use of his property, does not constitute a taking for inverse-condemnation purposes. *See, e.g.*, *MC Props, Inc. v. City of Chattanooga*, 994 S.W.2d 132, 136 (Tenn. Ct. App. 1999) (reversing judgment in favor of the plaintiffs, who complained that the denial of their request to rezone their property from residential/religious to commercial constituted a taking, where the church on the property was still being used as a church and the residential properties were still functional as residential property, such that the plaintiff property owners still had some beneficial use of their property).

Defendants in the present case argue that the inverse condemnation cause of action fails because Plaintiffs have not been denied all beneficial use of their property. Plaintiffs argue that their

Amended Complaint is adequately pleaded and that the question of beneficial use is a highly fact-intensive inquiry not properly the subject of a motion to dismiss. The Court finds, to the contrary, that the inverse-condemnation section of the Amended Complaint does little more than re-allege the facts supporting the claim that the denial of the Rezoning Application was arbitrary and capricious. With respect to the beneficial use of their property, the Shelton Plaintiffs assert only that "the family agricultural cattle operation was no longer economically viable" (1st Am. Compl. at ¶ 114), and that "the prospect of Plaintiffs being able to realize the beneficial uses to which their property is suited is in serious doubt," implying that the development of the property as a Bible theme park is the only conceivable beneficial use of the Property.

Plaintiffs have included an averment that official state actions consisting of an "illegal, arbitrary or capricious denial of a zoning application" also provide grounds for an inverse condemnation claim, but such a statement is a legal conclusion that the Court is not required to credit. Moreover, Plaintiffs are simply incorrect in asserting that an arbitrary zoning action necessarily gives rise to a cause of action for inverse condemnation. In fact, the cases to which Plaintiffs cite stand for the proposition that a zoning action that deprives a property owner of all beneficial use of his property is *per se* arbitrary in nature. *Bayside Warehouse*, 470 S.W.2d at 378. That is *not* the same as saying that an arbitrary action always deprives an owner of beneficial use and therefore gives rise to a claim for inverse condemnation. In this case, Plaintiffs fail to effectively allege that the zoning action in question deprives them of all beneficial use of their property.[4] The Court agrees with the Defendants that Plaintiffs have failed to adequately allege facts that would support a claim for inverse condemnation under Tennessee law. That claim will therefore be dismissed without prejudice.

     **E.**     **Plaintiffs' Negligence Claims Are Subject to Dismissal with Prejudice.**

Both sets of Plaintiffs include a cause of action against Rutherford County alone for its own negligence and that of its employees acting within the scope of their employment, which caused injury to Plaintiffs by the loss of their property right in the contract to sell their property, for which Plaintiffs are entitled to recover damages pursuant to the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn.

---

[4] The Court further notes that simply to insert into an amended complaint a bald assertion that the Defendants' action deprived Plaintiffs of all beneficial use of their property would likely not be sufficient, under *Twombly*, to state a claim for inverse condemnation. Rather, Plaintiffs would need to allege actual facts that support that assertion.

Code Ann. § 29-20-101 *et seq.*  (1st Am. Compl. ¶ 131.)

In fact, the TGTLA vests exclusive jurisdiction over actions governed by the TGTLA to state circuit courts.  Tenn. Code Ann. § 39-20-307.  The Sixth Circuit has interpreted that provision as a "clear preference" on the part of the Tennessee General Assembly "that TGTLA be handled by its own state courts.  This unequivocal preference of the Tennessee legislature is an exceptional circumstance [under 28 U.S.C. § 1367(c)] for declining jurisdiction."  *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).  On that basis alone, the Court has the discretion to decline to exercise jurisdiction over any claim brought under the TGTLA.  The Court nonetheless finds that dismissal without prejudice would be a waste of judicial resources given that the claims are subject to dismissal on immunity grounds.

Plaintiffs' claims against Rutherford County, a government entity, are governed by the TGTLA. Tenn. Code Ann. § 29-20-205.  The TGTLA provides that governmental entities are not immune from suit "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment *except* if the injury arises out of . . . civil rights[.]"  Tenn. Code Ann. § 29-20-205(2) (emphasis added).  The exceptions listed in § 29-20-205 are the only torts for which immunity is *not* removed when an injury is proximately caused by a negligent act or omission of an employee within the scope of employment.  *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84 (Tenn. 2001).

In this case, Plaintiffs' claims against Rutherford County arise out of actions that constitute exceptions under § 29-20-205—specifically, the denial of the Rezoning Application and the failure to reconsider that decision, in violation of the Plaintiffs' civil rights.  Although the Plaintiffs attempt to characterize their negligence cause of action as based upon claims that the County failed to follow its own rules and procedures, failed to discharge its duties in a reasonably competent manner, failed to educate the Commissioners as to the proper procedures to be followed, and so forth, the fact remains that the *injuries* Plaintiffs allege to have arisen from these instances of purported negligence consist of violations of their civil rights.  In other words, the negligence claims are asserted in the context of a civil rights case and are based upon the same actions that gave rise to the civil rights claims.  As such, the cause of action falls within those to which the County, as a state entity, retains its immunity under Tenn. Code Ann. § 39-20-205.  *Cf. Willis v. Neal*, 2006 WL 270288, at *17 (E.D. Tenn. Feb. 1, 2006) (explaining that "§ 29-20-205 of the TGTLA provides that immunity is retained when the injury arises out of 'civil

rights,' " and dismissing the plaintiff's state-law claims in that case because they were asserted "in the context of a civil rights case" and the "[plaintiff's] alleged injuries arise out of 'civil rights' [under § 29-20-205]."); *Hale v. Randolph*, 2004 WL 1854179, at \*17 (E.D. Tenn. Jan. 30, 2004) (construing "civil rights" under § 29-20-205 to include claims arising under the federal civil rights laws and the United States Constitution). ). On that basis, Plaintiffs' negligence claims against Rutherford County are subject to dismissal.

IV.     **CONCLUSION**

For the reasons set forth herein, Defendants' motions to dismiss the Shelton Plaintiffs' and the Developer Plaintiffs' claims will be denied in part and granted in part. Specifically, the motions to dismiss the state-law claims will be granted. The Plaintiffs' respective negligence claims will be dismissed with prejudice and the inverse-condemnation claim, asserted by the Shelton Plaintiffs only, will be dismissed without prejudice. In all other respects the motions will be denied. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge