IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **STEVE SHELTON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:09-cv-0318** |
| | ) | |
| **RUTHERFORD COUNTY, TENNESSEE and** | ) | **Judge Thomas A. Wiseman, Jr.** |
| **JAMES C. COPE individually and in his** | ) | |
| **official capacity as Rutherford County Attorney,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Presently pending are (1) Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 94) and (2) Defendants' Second Motion for Summary Judgment (Doc. No. 95). For the reasons set forth herein, Plaintiffs' motion will be denied, Defendants' granted, and this matter dismissed.

## I.    STANDARD OF REVIEW

Summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. Moreover, it is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position. *Celotex*, 477 U.S. at 324.

The standard of review for cross motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). Significantly, "[t]he filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Id.* at 248 (citation omitted). Rather, in reviewing cross motions for summary judgment, courts are to "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

In this case, however, the facts are basically undisputed, and resolution of the parties' motions requires the resolution of purely legal questions.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

Although the Court has on prior occasions set forth detailed accounts of the background of this case, a brief reiteration of the facts might facilitate a more thorough understanding of the issues raised in the present motions.

Plaintiffs own approximately 240 acres of largely undeveloped farmland in Rutherford County near the intersections of Interstates 24 and 840 (the "Property"). Plaintiffs had entered into a contract to sell the Property to developers[1] for the purpose of developing the land as a Bible-based theme park, but the sale was conditioned upon the developers' obtaining the necessary permits and zoning alterations for the construction of the park.

On February 12, 2008, Plaintiffs' filed an application before the Rutherford County Commission seeking to change the zoning status of the Property from "agricultural, residential or religious" to "commercial" use so the Property could be used for a Bible theme park. The application was denied by the Rutherford County Commission ("Commission" or "County Commission") on May 15, 2008. At that meeting, after much contentious discussion and public input, the Commission was notified that County

---

[1] The developers, Rutherford Property Owners, LLC and BPU Holdings, LLC ("Developer Defendants"), also brought their own federal lawsuit asserting essentially identical claims to those of Plaintiffs here. The suits were consolidated for purposes of discovery and trial in June 2009. In April 2010, the Court granted permission to the Developer Defendants' attorney to withdraw and gave the Developer Defendants two weeks to obtain new counsel. The Developer Defendants failed to obtain new representation and their case was dismissed for failure to prosecute on May 19, 2010.

Attorney Cope had "ruled" that § 4.05 of Rutherford County's Zoning Resolution applied to the Plaintiffs' Application, which meant that a two-thirds majority vote of the Commissioners was required in order for the Plaintiffs' application to pass.[2]  Pursuant to § 4.05, the "supermajority vote" requirement was triggered if twenty percent of the "owners" of land adjacent to or directly across a public road from the property that was the subject of a rezoning application or a request for a conditional-use permit filed valid protest petitions opposing the application.  The Commission voted by a margin of twelve to nine in favor of passing Plaintiffs' application.  Because the Commission understood that the provisions of § 4.05 had been triggered, requiring a supermajority of fourteen in favor in order to pass, the application was denied.

Plaintiffs later requested that the Commission reconsider its denial on the basis that application of § 4.05 had been incorrect because Defendant Cope, in tallying the protest petitions, had failed to apply the definition of "owner" contained in § 2.02 of the Zoning Resolution.  Plaintiffs asserted that if the correct number of owners of adjacent properties had been taken into account, the percentage filing protest petitions would have been less than the requisite twenty percent needed to trigger application of § 4.05.  Plaintiffs also presented legal authority in the form of a copy of an unreported judicial opinion from the Tennessee Court of Appeals stating that "community opposition is not a legitimate basis to deny a zoning application that meets all local zoning law requirements."  (Am. Compl. ¶ 43, citing *B&B Enters. of Wilson Cnty., LLC v. City of Lebanon*, No. M2003-00267-COA-R3-CV, 2004 Tenn. App. LEXIS 848 (Tenn. Ct. App. Dec. 16, 2004).)  The Commission declined to reconsider its prior decision.

On July 25, 2008, Plaintiffs appealed the Commission's decision to the Chancery Court for Rutherford County by filing a common-law Petition for Writ of Certiorari.  A hearing or trial was held on October 1, 2008 and the Chancery Court issued its decision vacating the Commission's decision on October 20, 2008.  In its written opinion, the Chancery Court held that the question of whether a supermajority vote was required for passage of Plaintiffs' zoning application was a matter that should have been determined, under the law, by the Commission rather than by the County Attorney, but that the record did not reflect that the Commission had made that determination or even that it was aware that it had the authority to do so.  Second, the Chancery Court determined that the record was "devoid of reasons, other than community opposition, for denial of the Zoning Request."  (Doc. No. 1-4, at 25.)

---

[2]  The complete text of the Rutherford County Zoning Ordinance is available on-line at http://www.rutherfordcountytn.gov/planning/pdfs/zoning_resolution0509.pdf.

Finally, the court did not reach the question of whether § 4.05 was a valid exercise of the Commission's authority and instead directed that, upon remand and reconsideration of the application of § 4.05 of the Zoning Resolution, the Commission should apply the definition of "owner" contained in § 2.02 of the Zoning Resolution and that "great care must be used to assure that the application of the provisions of Section 4.05 is made [in] a manner which is fair and appropriate and not discriminatory, arbitrary or capricious." (Doc. No. 1-4, at 25.) In addition, although the Chancery Court did not specifically make a determination that the Defendants' actions had violated Plaintiffs' constitutional rights, it nevertheless found it appropriate, "after considering all the proof," to award attorneys' fees to the petitioners pursuant to 42 U.S.C. § 1988. (Doc. No. 1-5, at 2.)

The County appealed the Chancery Court decision to the Tennessee Court of Appeals. While that appeal was still pending, Plaintiffs filed this suit against defendants Rutherford County, Tennessee and Rutherford County Attorney James C. Cope in his official and individual capacities asserting claims pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1988 for compensatory and punitive damages arising from alleged violations of their rights under the Fifth and Fourteenth Amendments to the United States Constitution, specifically the violation of their substantive-due-process rights. Plaintiffs allege that the arbitrary, capricious and unconstitutional actions of the Rutherford County Commission and County Attorney James Cope caused them to lose their $11,040,000 contract to sell the Property. Plaintiffs also asserted state-law claims for inverse condemnation and negligence against defendant Rutherford County only.

On September 8, 2009, this Court issued an order granting in part the motions to dismiss filed by Defendants, dismissing with prejudice Plaintiffs' state-law negligence claim and dismissing without prejudice Plaintiffs' inverse-condemnation claim. In all other respects, the motions were denied. The Court specifically found that the Chancery Court's decision in the underlying state court action was, at that time, the final state-court decision and therefore had preclusive effect in this Court. The Court also noted that the parties' appeal of the Chancery Court decision was still pending.

In October 2009, the Tennessee Court of Appeals vacated the Chancery Court's decision. In its opinion, the appellate court held specifically that "Section 4.05 of the Rutherford County Zoning Resolution is not within the [Tennessee] General Assembly's grant of authority to the County and is

therefore *ultra vires* and void *ab initio.*"  *Shelton v. Rutherford County, Tenn.*, No. M2008-02596-COA-R3-CV, 2009 WL 3425638, at *4 (Tenn. Ct. App. Oct. 23, 2009) (citing Tenn. Code Ann. § 13-7-105(a)).[3]  The court held that the Plaintiffs' zoning application "received a majority vote of the county commission and should be declared to have passed."  *Id.*  Having reached that conclusion, the court noted that it had no need to reach many of the other issues raised by the parties.  It did, however, vacate the Chancery Court's award of attorneys' fees.  The court expressly noted that it was "aware of cases holding that § 1988 may allow attorney fee awards to plaintiffs who succeed on state law claims that are pendent to undecided substantial civil rights or constitutional claims arising out of a common nucleus of operative facts," but was "unwilling to speculate as to the substantiality of the Sheltons' claims or as to whether they would have prevailed on those claims."  *Id.* at *6 n.5 (citation and quotation marks omitted).  Based upon that reasoning, the court "vacate[d] the decision of the trial court and remand[ed] with instructions that the trial court direct the Rutherford County Board of Commissioners to declare the zoning application granted."  *Id.* at *6.

Subsequent to the Tennessee Court of Appeals' ruling, the parties here brought motions for summary judgment as to the purported preclusive effect of that ruling.  Plaintiffs asserted that the Court of Appeals did not upset the Chancery Court's finding that their constitutional rights were violated and that the Chancery Court's decision in that regard remained the law of the case and was, as such, binding upon this Court.  Plaintiffs also argued that the Tennessee Court of Appeals did not actually vacate that portion of the Chancery Court opinion awarding attorneys' fees.  Defendants asserted the opposite:  that the Court of Appeals reached a conclusion that Defendants did *not* violate Plaintiffs' constitutional rights, and that that decision is binding upon this Court.

This Court disagreed with both parties' arguments and denied both motions for summary judgment, finding that the question of whether Plaintiffs had a viable claim under 42 U.S.C. § 1983 for violation of their substantive- due-process rights remained an open question.  At the same time, the Court essentially invited the parties to file yet another round of dispositive motions aimed at that very question.  The Court noted then that the threshold issue presented was whether Plaintiffs had a constitutionally

---

[3] The Tennessee statute governing amendment to any provision of a county zoning ordinance specifically requires a "favorable vote of a majority of the entire membership of the county legislative body."  Tenn. Code Ann. § 13-7-105(a).

protected property or liberty interest that would support a substantive-due-process claim. If Plaintiffs made the requisite showing in that regard, then the Court would have to consider whether the Defendants' actions violated that interest, that is, whether their actions must be deemed arbitrary and capricious under federal law. The parties have now responded to that invitation, each filing its own separate motion for summary judgment.

In their motion for partial summary judgment, Plaintiffs insist that they had a constitutionally protected property right in the justifiable expectation that their zoning application would be approved, and that the County Commission's failure to approve their petition was without rational basis in violation of their fundamental due-process right to be free from oppressive government action.

Defendants, for their part, seek judgment in their favor on the grounds that Plaintiffs did not have a constitutionally protected property interest in having their property rezoned and, even if they did, that the County Commission's rejection of the application based upon § 4.05 of the Rutherford County Zoning Resolution was not entirely without a rational basis, such that Defendants are entitled to summary judgment in their favor on Plaintiffs' § 1983 claims. Defendants also point out that § 4.05 of the Rutherford County Zoning Resolution has been in effect at least since 1984. Up until the Court of Appeals' decision in this case declaring § 4.05 to be *ultra vires* and void *ab initio*, no court decision had ever considered the validity of § 4.05 or ruled it to be invalid.

III.    **ANALYSIS AND DISCUSSION**

   A.    **Whether Plaintiffs Had a Constitutionally Protected Property Interest in Having Their Property Rezoned**

"To establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally protected property or liberty interest." *Silver v. Franklin Twp. Bd. of Zoning Apps.*, 966 F.2d 1031, 1036 (6th Cir. 1992). In *Silver*, the plaintiff had acquired an option to purchase a parcel of land in an area zoned for single-family residential use, but on which the plaintiff wanted to build condominiums. The board of zoning appeals granted him a conditional zoning certificate with seven conditions to be met. The board later rescinded the conditional approval, based on a purported finding

that the plaintiff had not met all of the required conditions.[4]  Plaintiff filed suit in federal court under §

1983.  The Sixth Circuit affirmed summary judgment for the board of zoning appeals on the basis that the

plaintiff had not established a violation of substantive due process, because the board retained discretion

to deny him his permit even if he met certain minimum, mandatory requirements:

> [B]efore [the plaintiff] can establish a violation of substantive due process he must
> demonstrate that he had a property interest in the use of the undeveloped parcel as a
> condominium complex.  To do this, [the plaintiff] must prove that the [board of zoning
> appeals] did not have the discretion to deny [the plaintiff's] use of the land as a
> condominium complex if he complied with certain minimum, mandatory requirements.  If
> the [b]oard had the discretion to deny [plaintiff] a conditional zoning certificate for a
> condominium complex even if he complied with certain minimum, mandatory
> requirements, then [plaintiff] would not have a "legitimate claim of entitlement" or a
> "justifiable expectation" in the approval of his plan.

*Id.* at 1036 (citations omitted).  *Cf. Triomphe Investors v. City of Northwood*, 49 F.3d 198, 203 (6th Cir.

1995) (affirming summary judgment for the defendant city on the plaintiff's substantive due-process claim

where the city's zoning regulation gave the city council discretion to issue—or deny—special use permits,

thus depriving the plaintiff of a legitimate claim of entitlement to a special-use permit that could support its

substantive due-process claim).

In the case at bar, Plaintiffs insist that they had a "'legitimate claim of entitlement' that if their

Conditional Use Permit ('CUP') request met the requirements in § 7.02 of Rutherford County's Zoning

Resolution that it would be approved."  (Doc. No. 99, at 4.)  They further insist that their application for a

conditional use permit met all the requirements of § 7.02 such that the County Commission lacked

discretion to deny their application, making this case factually distinguishable from *Silver* and *Triomphe

Investors.*  Plaintiffs' argument is based on their presumptions that (1) their zoning petition is more

properly characterized as a request for a conditional use permit than a rezoning application or an

amendment to the Zoning Resolution; (2) a request for a conditional use permit, unlike a rezoning

application or an application to amend the Zoning Resolution, "involves an administrative decision" rather

than a legislative decision (Doc. No. 99, at 6); (3) if the request for a conditional use permit "meets

already existing zoning regulations it must be granted" (*id.*)—that is, the decision to grant it does not

require the exercise of any discretion; and (4) "the undisputed fact" is that Plaintiffs' request for a

---

[4] The plaintiff filed a state-court action challenging the board's decision, but that case was voluntarily dismissed after the seller of the land at issue was bought by another entity that refused to honor the plaintiff's option to purchase the parcel on which he planned to build.

conditional use permit "met all requirements in the County's Zoning Resolution."  (Doc. No. 99, at 2.)

The elements of Plaintiffs' proof are faulty, however, rendering their conclusion invalid as well. First, with respect to whether Plaintiffs' zoning petition is properly characterized as a rezoning application or a request for a conditional use permit, the Tennessee Court of Appeals noted in its decision reversing the Chancery Court ruling in the underlying state-court proceedings that "[w]here the particular restriction constitutes, or would constitute, a *substantial interference* with land use, the [governmental body] ordinarily must treat it as a zoning regulation and must follow statutory or character zoning procedures, even though other authority for the particular type of ordinance has been granted."  *Shelton v. Rutherford County, Tenn.*, No. M2008-02596-COA-R3-CV, 2009 WL 3425638, at *3 (Tenn. Ct. App. Oct. 23, 2009) (quoting *Edwards v. Allen*, 216 S.W.3d 278, 293 (Tenn. 2007)).  In *Edwards*, the court found that because the request at issue substantially affected the use of the land, the resolution would amend the county zoning map regardless of whether the property owners meant to apply for a conditional use permit or to request a new zoning classification.  *Id.*  Likewise in the present case, the Tennessee Court of Appeals found, based on the same stipulated facts before this Court, that Plaintiffs' "request to allow a 282-acre tract of property zoned for residential use to be used for the development of an amusement park would substantially affect the use of the land."  *Id.* at *4.[5]  As a result, the Tennessee Court of Appeals also necessarily found that Plaintiffs' petition—however denominated—was subject to Tenn. Code Ann. § 13-7-105, which specifically provides that any amendment to any provision of a zoning ordinance in Tennessee requires a "favorable vote of a majority of the entire membership of the county legislative body."  Tenn. Code Ann. § 13-7-105(a).

As a result, Plaintiffs are judicially estopped from denying that the proposed use of their land would "substantially affect" its use, and that fact leads necessarily to the conclusion that the characterization of Plaintiffs' zoning petition is immaterial to the resolution of this case.  In short, regardless of how Plaintiffs' application for a change in the use of their land is characterized, the County Commission's decision whether to grant it involved the exercise of discretion.  Section 4.04 of the Zoning

---

[5] The Tennessee Court of Appeals was called upon to consider this question because the Defendants argued that the validity of § 4.05 was not properly raised in the Chancery Court and was therefore waived on appeal.  The Court of Appeals disagreed, finding Plaintiffs had properly raised the issue below, and that § 4.05 was rendered invalid by Tenn. Code Ann. § 13-7-105.

Resolution states: "The county legislative body *may* from time to time amend the number, shape, boundary, area or any regulation of or within any district or districts or any other provision of any zoning resolution." The use of "may" in that provision, as this Court noted in its March 18, 2010 Order, grants discretion to the County Commission as to whether to grant petitions for such amendments. *See Triomphe Investors*, 49 F.3d at 203 ("[T]he use of the word 'may' provides sufficient discretion to undercut any argument that the language of the zoning regulations vest[s] in [plaintiff] an entitlement to [a zoning change].").

In addition, Section 6.01 of the Zoning Resolution specifically provides that "[c]onditional uses are not permitted by right, only upon appeal, and in conformance with the standards set forth in Article VII, Section 7.02 as determined by the Boards." Section 7.02 of the Zoning Resolution sets forth the standards that must be met before a conditional use permit may be issued. The first five of these standards are plainly subjective in nature:

> A. That the proposed building or use will not have a substantial or undue adverse effect upon adjacent property, the character of the neighborhood, traffic conditions, parking, utility facilities, and other matters affecting the public health, safety, and general welfare.
>
> B. That the proposed building or use will be constructed, arranged, and operated so as to be compatible with the immediate vicinity and not interfere with the development and use of adjacent property in accordance with the applicable district regulations.
>
> C. That the proposed building or use will be served adequately by essential public facilities and services such as highways, streets, parking spaces, drainage structures, refuse disposal, fire protection, water, and sewers; or that the persons or agencies responsible for the establishment of the proposed use will provide adequately for such services.
>
> D. That the proposed building or use will not result in the destruction, loss, or damage of any features determined by the Board . . . to be of significant natural, scenic or historic importance.
>
> E. That the proposed building or use complies with all additional standards imposed by the Board.[6]

Zoning Resolution § 7.02(A)–(E). Plaintiffs' contention that it is undisputed that they satisfied all the requirements of this ordinance is simply not supported by the record, as reflected by the Minutes of the Commission's May 15, 2008 meeting. When asked if Plaintiffs' application met the requirements of §

---

[6] Section 7.01 of the Zoning Resolution states that the "Board may impose such conditions upon the premises benefited by the permit for a conditional use as may be necessary to prevent or minimize any adverse effects of such conditional use and to insure the compatibility of the conditional use with other property in the vicinity of such use."

7.02, Planning Director Doug Demosi said the application met all of the general criteria, but "criteria A, undue adverse effect, and B, compatible with the area, arguments are made either way." (Doc. No. 98-1, at 7.) Mr. Demosi further noted specifically that "the Bible Park does not fit the character of the neighborhood because the area is primarily residential." (*Id.*) Certain of the commissioners agreed with that assessment and expressed concern that the development proposal would adversely affect the volume of traffic in the neighborhood. (*Id.*) The Commissioners clearly had discretion and exercised that discretion when voting upon whether to approve or deny Plaintiffs' petition. *Cf. Brown v. City of Ecorse*, 322 F. App'x 443, 446 (6th Cir. 2009) (holding that a zoning body's responsibility to determine whether dwellings are "aesthetically compatible in design and appearance to homes in the neighborhood in which it is located" conferred discretion on the body to deny or approve a requested permit); *Loreto Dev. Co. v. Vill. of Chardon*, Nos. 97-3502, 97-3656, 1998 WL 320981, at *3 (6th Cir. June 4, 1998) (finding a zoning body had discretion when the zoning ordinance to which it was subject required it to determine, among other things, "whether the proposed use (1) is consistent with the essential character of the neighborhood; (2) will not substantially or permanently impair adjacent property; and (3) will not detrimentally impact public welfare").

Finally, Section 6.11 of the Zoning Resolution summarizes three types of procedures for the processing of conditional use permits. The first, "Type I," concerns only "objective decisions" and involves "[l]ittle, if any, discretion." A Type II procedure involves both subjective and objective decisions and requires discretion on the part of the Commission. A Type III procedure involves "[c]omplex or subjective decisions and other controversial decisions" and requires a "[g]reat deal of discretion." Zoning Resolution § 6.11. A Type III procedure is prescribed whenever the proposed use has a "[p]ossible significant effect on some persons or broad effect on a number of persons." *Id.* The exercise of discretion, in consideration of Type II and Type III conditional use permits, necessarily implies the discretion to deny as well as to grant such permit applications. The undisputed facts in this case make it clear that Plaintiffs' petition was either a Type II or a Type III petition, consideration of which required a substantial amount of discretion on the part of the Commission.

In other words it is clear, as this Court intimated in its March 18, 2010 Order, that the City

Commission had the discretion to deny Plaintiffs' zoning application upon its initial presentation.[7] Under the law in this circuit as articulated in *Silver* and *Triomphe Investors*, the fact that the Commission had such discretion means that Plaintiffs did not have a "legitimate claim of entitlement" or a "justifiable expectation" in the approval of their zoning application sufficient to establish the existence of a constitutionally protected property or liberty interest. *Silver*, 966 F.2d at 1036.

However, the additional question the Court raised in its prior Order, and which it directed the parties to consider, was whether the Commission retained the discretion to deny Plaintiffs' petition even after a majority of its members had voted to approve Plaintiffs' petition, or whether at that moment the Plaintiffs suddenly acquired a legitimate claim of entitlement or a justifiable expectation in the approval of their petition that would support a substantive due-process claim.

**B.    Whether Plaintiffs Acquired the Requisite Property Interest**

In addressing this question, Plaintiffs appear to argue that even if the County Commission had discretion to deny the application at the outset of the proceedings, it somehow forfeited that discretion when it appealed the Chancery Court's decision to the Tennessee Court of Appeals, and subsequently became bound by that court's reversal and remand of the matter with instructions that Plaintiffs' petition be granted. This argument is simply irrelevant and does not address the actual question posed, which was whether Plaintiffs acquired a property interest in issuance of the permit sufficient to sustain a substantive-due-process claim once a majority of commissioners voted in favor of granting it. The fact that the parties pursued appeals of the County Commission's initial decision—first by Plaintiffs' writ of certiorari to the Chancery Court challenging, among other matters, the use of Zoning Resolution § 4.05 to require a supermajority vote to pass their application, and second by Defendants' appeal of the Chancery Court decision—simply means that the state procedural process designed to correct erroneous decisions by county zoning bodies was effective (thereby obviating any potential procedural-due-process claim).

Defendants address the question raised by this Court by citing *Andreano v. City of Westlake*, 136 F. App'x 865 (6th Cir. 2005), and *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911

---

[7] Plaintiffs argue that various commissioners "admitted" that they did not have discretion to deny a conditional use permit if all the preconditions set forth in the Zoning Ordinance was met. The commissioners' testimony in that regard is irrelevant in light of the unambiguous language of the Zoning Ordinance itself.

(2d Cir. 1989), in support of the principle that a municipality does not "forfeit its discretion" even if its exercise of that discretion to deny a zoning petition is later deemed to violate state law or even to be arbitrary and capricious under state law. *Andreano*, 136 F. App'x at 872.

The facts in *Andreano* are not directly analogous to those here, but they are nonetheless instructive. There, the court was called upon to consider whether the City of Westlake "retained discretion" to deny a property owner's proposed land-use plan "even though the Plan complied in all respects with the City's original minimum lot-size ordinance." *Id.* at 871. The court found that it did retain such discretion, because the proposed plan also did not provide for an approved road extension that was incorporated by reference into the City's Code. Further, the court determined that the City did not forfeit its discretion to reject the plan by failing to act on it within ninety days as required by the City's Code: "Westlake's initial discretion to reject the Plan deprived Andreano of a property interest in the Plan's approval, regardless of how unlawful under state law Westlake's dilatory commencement of the Condemnation Action may have been." *Id.* at 872 (citing *RRI Realty Corp.*, 870 F.2d at 919). In other words, the obvious import of the holding is that the question of whether a zoning body has discretion— and whether a plaintiff has the requisite property interest to support a substantive-due-process claim—is determined as of the time of the initial decision by the particular facts of the case and the language of the applicable zoning code. *Andreano* therefore strongly suggests that the Plaintiffs here lacked such an interest despite the state court's ultimate determination that the denial of their application was illegal under state law.

The facts of *RRI Realty*, cited with approval in *Andreano*, are even more closely analogous to those here. In *RRI Realty*, a builder brought a substantive-due-process claim in federal court against a city after its building permit was denied. By the time the builder brought its claim, the state court had already determined that the builder was entitled to the permit as a matter of law, because the permitting body had declined to act on the application for the permit within the thirty-day time period prescribed by state law. Despite the fact that the builder in that case was entitled to the permit once the thirty days had expired, and after that point the permitting body no longer had the discretion to deny the application, the Second Circuit nonetheless held that , for constitutional purposes, the property-interest inquiry could not be fragmented into two parts—that is, the court would not inquire into the city's degree of discretion both

before and after expiration of the thirty-day period. Rather, the board's initial discretion was sufficient to deprive the plaintiff of a property interest of constitutional magnitude in the permit, regardless of how unlawful the board's subsequent denial of the permit might have been. As the court stated:

> [The plaintiff's] argument that the [board] forfeited its discretion by not acting on the application within the statutory thirty-day period, and thus was required to approve the permit, is also unavailing. It may be that on the thirty-first day, [the plaintiff] was entitled to the permit, as a matter of state law, as the state court held. But [the plaintiff's] claim to the permit, as a matter of constitutional law, cannot be fragmented into two claims, one subject to the [the board's] discretion within thirty days and one subject to a mandatory duty to issue after thirty days. For purposes of a property interest under the Due Process Clause, the claim to the permit is indivisible. The [board's] discretion to deny the permit during the thirty-day interval deprived [the plaintiff] of a property interest in the permit, regardless of how unlawful under state law the ultimate denial may have been.

*Id.* at 919.

This Court is persuaded by the reasoning in *RRI Realty* that Plaintiffs here never acquired a "legitimate claim of entitlement" or a "justifiable expectation" in the approval of their petition plan, *Silver*, 966 F.2d at 1036, despite the fact that Defendants' denial of Plaintiffs' zoning petition was ultimately determined to have been erroneous and unlawful under state law. Rather, the City Commission's initial discretion to deny the request for a conditional use permit deprives Plaintiffs of any constitutionally protected property interest in the permit, even though Plaintiffs later became entitled to the permit as a matter of state law when a majority of the Commission voted to approve the application.

Because Plaintiffs lacked a constitutionally protected property interest in the issuance of the permit, their claims under 42 U.S.C. §§ 1983 and 1985(3) for violation of that interest necessarily fail, regardless of whether the Commission's decision was arbitrary or capricious. *See Andreano*, 136 F. App'x at 871 ("In the absence of a constitutionally protected interest, arbitrary and capricious conduct will not support a substantive due process claim."). Based on that conclusion, it necessarily follows that Defendants are entitled to summary judgment in their favor, and Plaintiffs' motion must be denied. The Court nonetheless also finds, as set forth below, that the Commission's decision was not arbitrary and capricious under federal constitutional standards, and Plaintiffs claims fail for that reason too.

### C.    Whether the Commission's Decision Lacked a Rational Basis

"The right not to be subject to 'arbitrary or capricious' action by a state either by legislative or administrative action is commonly referred to as a 'substantive due process right.'" *Pearson v. City of*

*Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992) (citation omitted).[8]  As the Sixth Circuit has stated, even if a government actor's actions might be deemed arbitrary and capricious under state law, that would not necessarily mean they must be found to be arbitrary and capricious under federal law. *Pearson*, 961 F.2d at 1222 ("'[A]rbitrary and capricious' in the federal substantive due process context means something far different than in state administrative law.").  In *Pearson*, the Sixth Circuit held that to prevail on a substantive-due-process attack on a state administrative action, "a plaintiff must show that the state administrative agency has been guilty of arbitrary and capricious action in the strict sense, meaning that there is no rational basis for the . . . [administrative] decision."  *Pearson*, 961 F.2d at 1221 (internal quotations and citations omitted).  Further, "[i]n the federal court . . . [t]he administrative action will withstand substantive due process attack unless it is not supportable on any rational basis or is willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." *Id.* (internal quotations and citations omitted).

In considering whether there was any rational basis to support the County Commission's action in the present case, this Court "may make only the most limited review of the evidence before the state administrative agency.  This review is limited to determining whether the agency has paid attention to the evidence adduced and acted rationally upon it.  The state decision may not be set aside as arbitrary and capricious if there is some factual basis for the administrative action."  *Id.* at 1222 (citations and internal quotation marks omitted).

Here, the relevant facts are undisputed.  Section 4.05 had been in effect and a part of the Rutherford County Zoning Resolution for at least twenty-four years when Plaintiffs' zoning petition was filed.  By that time, the Zoning Resolution had been criticized by the Rutherford County Chancery Court and the Tennessee Court of Appeals, but no court had ever addressed the validity of § 4.05 specifically or held the ordinance to be illegal or void.  It was therefore not completely irrational for the County Commission to rely upon that provision in denying Plaintiffs' petition, regardless of the fact that Plaintiffs questioned the factual basis upon which the Commission invoked § 4.05, or the fact that the Tennessee Court of Appeals subsequently ruled § 4.05 to be void and of no effect.  No reasonable trier of fact could

---

[8] When an action affects a relatively small number of persons as individuals, that action is considered administrative, even when it was taken by a legislative body.  *Pearson*, 961 F.2d at 1217.

conclude that the County Commission's denial of Plaintiffs' zoning petition pursuant to § 4.05 was "not supportable on any rational basis or [was] willful and unreasoning . . . , without consideration and in disregard of the facts or circumstances of the case." *Pearson*, 961 F.2d at 1221. *Cf. Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992) (holding that the city did not violate plaintiff's substantive-due-process rights in denying a rezoning application pursuant to a zoning ordinance that was later determined to be invalid, and further noting that it would have reached the same conclusion "even if the City had knowingly enforced the invalid ordinance in bad faith"). *See also Andreano*, 136 F. App'x at 872 (even though the city's denial of plaintiff's land-use plan was found to be arbitrary and capricious under state law, holding that the City's "dilatory and deplorable conduct" was not arbitrary and capricious for federal substantive-due-process purposes); *Triomphe Investors*, 49 F.3d at 202 (finding that the City Council's reliance on community members' concerns regarding the effect of the proposed land-use project on their own property values constituted a reasonable basis for denying the permit, even though the state court later determined these unsubstantiated concerns were insufficient to justify denial of the permit).

Thus, even if Plaintiffs were able to establish the possession of the requisite property interest in approval of their application for a conditional use permit, their §§ 1983 and 1985(3) claims would nonetheless fail on the alternative ground that they cannot show that Defendants' denial of their application was arbitrary and capricious under the federal standards articulated by the Sixth Circuit. On this basis as well, Defendants are entitled to summary judgment in their favor.

## IV.    CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 94) will be denied and Defendants' Motion for Summary Judgment (Doc. No. 95) will be granted and this matter dismissed. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge